UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NATHAN SMITH,<br><br>Defendant. | 3:17-CR-30057-RAL<br><br><br>**OPINION AND ORDER ON MOTION<br>FOR COMPASSIONATE RELEASE** |

In May 2017, a federal grand jury returned a superseding indictment charging Nathan

Smith (Smith) with one count of assault of a dating partner by strangulation and suffocation in

violation of 18 U.S.C. §§ 1152 and 113(a)(8) and felon in possession of a firearm in violation of

18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 33. Smith violated his furlough conditions in August

of 2017, absconded, and was not brought back into federal custody until June 2019. Doc. 61 at 6–

7. Smith then pleaded guilty to a superseding information charging one count of felon in

possession of a firearm in violation of §§ 922(g)(1) and 924(a)(2) and one count of failure to appear

in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1)(A)(ii). Doc. 64. At his sentencing hearing,

Smith was sentenced below his guideline range to an aggregate of 30 months of imprisonment

between his two counts of conviction. Doc. 80 at 2. He is currently confined at USP Victorville,

a high security penitentiary, and has filed a pro se motion for compassionate release, citing his

underlying health conditions and the COVID-19 pandemic sweeping across the United States as

justification. Doc. 88. The Federal Public Defenders Office for North and South Dakota filed a

1

supplement on his behalf, and the Government responded in opposition.  Docs. 93, 98, 99, 101.
This Court has reviewed the file material related to this motion, and denies Smith's motion at this
time.

**I.     Statement of Relevant Facts**

Smith was charged with being a felon in possession of a firearm after law enforcement
found a rifle at his residence in April 2017.  Docs. 33; 61 at 2.  Law enforcement had received a
call about a domestic violence incident and responded to the residence Smith was sharing with his
intimate partner at the time.  Doc. 61 at 2.  When an officer arrived, Smith's intimate partner
gestured to the location of a rifle and indicated that Smith brought the firearm into the home that
day against her wishes.  Id.  The officer observed marks on both Smith and his intimate partner,
and she later reported that Smith was threatening her and her children with a weapon.  Docs. 61 at
2; 75 at ¶ 11.  Smith indicated that he had purchased the firearm that day.  Doc. 61 at 2.  Smith
was a convicted felon, having been convicted of burglary of a habitation, a second-degree felony,
in Texas in 2009, and was therefore, prohibited from possessing any firearms.  Id.

Smith was originally indicted for assault of an intimate partner by strangulation and
suffocation in April of 2017.  Doc. 15.  He was arrested and detained, but eventually furloughed
to attend a treatment program at the VA Medical Hospital in Hot Springs, South Dakota.  Doc. 61
at 4.  Shortly after he was furloughed, a federal grand jury returned a superseding indictment
adding the felon in possession of a firearm charge.  Doc. 33.  Smith participated in treatment for a
few months but walked away from the facility on August 14, 2017 and did not turn himself in to
the probation office in violation of the terms of his pretrial release.  Doc. 61 at 6.  A warrant was
issued for Smith's arrest on August 28, 2017, and he failed to appear for his federal court jury trial

scheduled for October 17, 2017. Id. at 7. Smith absconded until his arrest in Sauk Centre, Minnesota, on June 10, 2019. Id.

In September 2019, Smith pleaded guilty to a superseding information charging felon in possession of a firearm and failure to appear in exchange for the Government's promise to dismiss the superseding indictment against him. Doc. 60 at 2–3. Smith faced a maximum sentence of 10 years imprisonment on the felon in possession of a firearm charge and a 5-year maximum on the failure to appear charge, with any sentence imposed on the failure to appear count to run consecutive to any other sentence of imprisonment. Id. at 3.

This Court conducted a change of plea hearing and ordered a presentence investigation report (PSR). Docs. 65, 67. The PSR revealed that Smith was a bit of a rolling stone with a significant criminal history. Smith grew up in a military family and moved often. Doc. 75 at ¶ 48. He enlisted in the military himself in 1994 when he joined the United States Air Force. Id. at ¶ 61. Smith completed two deployments and received an Honorable Discharge in 1998 when he termed out. Id. Smith also enlisted with the United States Army and served from 2005 until 2007. Id. at ¶ 62. He was deployed once with the Army, but he ultimately received a Chapter 14 Discharge due to disciplinary actions and getting into trouble while off duty. Id. Smith's criminal history included a conviction for burglary and for multiple assaults between 2008 and 2015, id. at ¶¶ 31–34, and he had multiple pending charges in different jurisdictions dating back to 2013, id. at ¶¶ 41–43. Smith's criminal history resulted in 10 criminal history points under the sentencing guidelines manual, placing him in criminal history category V. Id. at 39. Based on the total offense level calculated at 18, Smith's advisory guideline range was 51-63 months custody. Id. at ¶ 66.

The PSR also provided insight into Smith's physical and mental health conditions as well as his substance abuse struggles. Id. at ¶¶ 52–56. Smith reported that he suffered from scoliosis,

3

hearing loss, nerve damage, hypertension, and arthritis, and that he had been diagnosed with post-traumatic stress disorder (PTSD), depression, and anxiety. Id. at 52–53. Smith disclosed that he averaged drinking a 12-pack of beer per day and opined that he would not have any legal problems if he did not consume alcohol. Id. at 54.

This Court conducted a sentencing hearing on December 9, 2019, and undertook the appropriate analysis of the sentencing factors found in 18 U.S.C. § 3553(a). Based on the nature and circumstance of the offense and the history and characteristics of Smith, this Court determined that a downward variance was warranted and sentenced Smith to 24 months custody for being a felon in possession of a firearm and 6 months for failure to appear to run consecutively. Docs. 80 at 2; 80-1 at 2–3. This Court determined that this sentence was sufficient, but not greater than necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. Doc. 80-1 at 3.

Smith has been in custody since his sentencing hearing and is currently incarcerated at USP Victorville, a high security penitentiary. See Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 19, 2020). He is now 44 years old and according to his BOP medical records suffers from mood disorder, PTSD, epilepsy/seizure disorder, essential (primary) hypertension, and low back pain. Docs. 90 at 1, 32; 92 at 1, 32, 44. He moves for compassionate release arguing that his enlarged heart, hypertension, and sleep apnea put him at higher risk of contracting a severe form of illness if he contracts COVID-19, the novel coronavirus sweeping across the country and infecting millions of Americans. Doc. 88. USP Victorville currently has 11 inmates and 11 staff members who have active infections of the COVID-19 virus. See COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/

4

(last visited August 19, 2020). There are 90 inmates and 7 staff who have recovered from the illness at USP Victorville, and there have been no deaths reported. See id.

Although the symptoms and effects of COVID-19 are somewhat of a continually evolving mystery, the Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that may place individuals at an increased risk of becoming severely ill. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Aug. 19, 2020). Among the underlying conditions that may place an individual at higher risk are serious heart conditions and hypertension. Id.

## II.   Compassionate Release Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues by which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction; ...

> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

**III.    Discussion**

Smith submitted a request to the warden of his institution on May 13, 2020, and again on June 23, 2020. Docs. 88-2; 97. More than thirty days have passed since he submitted these requests, and the warden has not brought a motion in on Smith's behalf. Therefore, this Court may consider and rule on Smith's motion for compassionate release at this time.

Smith primarily argues that he satisfies the "extraordinary and compelling reason" standard under the "other reasons" "catch all" provision of United States Sentencing Guideline 1B1.13 comment note 1(D). In the alternative, he argues that he qualifies for compassionate release under comment note 1(A)(ii).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The sentencing factors include the nature and circumstances of the offense and the personal history and characteristics of the defendant, all of which are described above. This Court applied a significant downward variance when it sentenced Smith approximately nine months ago, and its analysis of the § 3553(a) sentencing factors remains the same today.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the

6

compassionate release statute.  28 U.S.C. 994(t).  The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13.  Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision.  See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Smith's alternative argument under U.S.S.G. § 1B1.13 comment note 1(A)(ii) is most easily dispensed with, and this Court will therefore address that issue first.  Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is

7

"suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he…is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Smith does not argue that his medical conditions make him unable to provide self-care at USP Victorville. Rather, he claims that the conditions of confinement combined with his medical conditions make it impossible for him to practice the type of personal hygiene and social distancing recommended by the CDC. The language of § 1B1.13 comment note (A)(ii) contemplates only that it is the medical condition that diminishes the ability to provide self-care, not the conditions of confinement generally. Therefore, Smith cannot establish "extraordinary and compelling reasons" to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Smith's motion under the "catch all" provision found in U.S.S.G. § 1B1.13 comment note (D). Smith argues that his underlying health conditions combined with the increased risks posed by COVID-19 establish "extraordinary and compelling reasons" other than those specifically listed, thereby justifying a compassionate release. The COVID-19 pandemic has had extraordinary effects on the United States and its economy. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Smith suffers from hypertension and claims to have an enlarged heart and sleep apnea. Hypertension does present a risk factor for severe complications of a COVID-19 infection, but the extent of that risk is yet unknown, particularly if his condition is well-controlled. Having an enlarged heart and sleep apnea were not found in Smith's provided medical records, and the CDC

8

has not recognized them as significant risk factors for contracting or developing a severe illness from COVID-19.

Smith has served nearly half of his 30-month sentence. However, according to the BOP Male Pattern Risk Scoring, he presents a high risk for recidivism. Doc. 97 at 3–4. The original sentence was chosen with care, considering Smith's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

IV.   **Conclusion and Order**

For the reasons stated herein, it is hereby

ORDERED that Smith's motion for compassionate release, Doc. 88, is denied.

DATED this _20ᵗʰ_ day of August, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE